**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In Re: Nebivolol ('040) Patent Litigation | )<br>) Civil Action No. 12-cv-5026 (EEB) (JC)<br>)<br>) Judge Elaine E. Bucklo<br>) Magistrate Judge Jeffrey Cole<br>)<br>) Member Cases:<br>) Civil Action No. 12-cv-1855<br>) Civil Action No. 12-cv-5030<br>) |

**<u>DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF</u>**

# <u>TABLE OF CONTENTS</u>

**Page No.**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     "Consisting of" excludes unrecited stereoisomers of nebivolol ...........................................2

     a.     Forest offers no evidence of how one of skill in the art would interpret the phrase "consisting of" *in light of the prosecution history* ................................................................................................2

     b.     The Court should consider Dr. Piwinski's opinion...................................4

     c.     Forest mischaracterizes the prosecution history .....................................5

     d.     The Xhonneux article and declaration have no bearing on the meaning of "consisting of" ................................................................8

     e.     Patent term extension is irrelevant to the meaning of "consisting of" ...............................................................................................8

     f.     Applicants disclaimed all unrecited stereoisomers, not just RSRR and SRSS .....................................................................................9

     g.     Defendants' non-infringement positions are irrelevant to claim construction...............................................................................10

II.    "Potentiating" requires synergy ...................................................................11

III.   "Active ingredients" means ingredients having pharmacological activity ......................13

CONCLUSION...................................................................................................................15

## TABLE OF AUTHORITIES

Page No(s).

*01 Communique Laboratory, Inc. v. LogMeIn, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012).................................................................7

*Chimie v. PPG Industries, Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005)..............................................................12

*Dow Chemical Canada, Inc. v. HRD Corp.*,
    656 F. Supp. 2d 427 (D. Del. 2009).........................................................5

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
    214 F.3d 1302 (Fed. Cir. 2000)................................................................8

*Hoechst-Roussel Pharms., Inc. v. Lehman*,
    109 F.3d 756 (Fed. Cir. 1997)..................................................................9

*Kim v. Earthgrains Co.*,
    No. 01 C 3895, 2010 WL 625220 (N.D. Ill. Feb. 18, 2010)..........................6, 7

*NeoMagic Corp.v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002)..............................................................10

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005)..............................................................10

*North American Container, Inc. v. Plastipak Packaging, Inc.*,
    415 F.3d 1335 (Fed. Cir. 2005)................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................2, 4, 13

*Raytheon Co. v. Indigo Sys. Corp.*,
    682 F. Supp. 2d 717 (E.D. Tex. 2010).....................................................6, 7

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002)..............................................................3, 6

*Salazar v. Procter & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005)................................................................7

*SanDisk Corp. v. Kingston Tech. Co., Inc.*,
    695 F.3d 1348 (Fed. Cir. 2012)..............................................................4, 5

*Shire Dev. LLC v. Watson Pharms., Inc.*,
    No. 12-60862-CIV, 2013 WL 174843 (S.D. Fla. Jan. 17, 2013)........................7

# TABLE OF AUTHORITIES
### (cont'd)

**Page No(s).**

*Uship Intellectual Props., LLC v. United States*,
  714 F.3d 1311 (Fed. Cir. 2013)..................................................................2, 3, 10

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008)..........................................................................5

*White Water Invs., Inc. v. Ethicon Endo-Surgery, Inc.*,
  No. 04-81178, 2005 WL 5955023 (S.D. Fla. Sept. 15, 2005)..............................5

*Winvic Sales, Inc. v. ValueVision Media, Inc.*,
  No. 09 C 7807, 2011 WL 4901315 (N.D. Ill. Oct. 14, 2011)...........................13

# OTHER AUTHORITIES

35 U.S.C. § 156.........................................................................................................8

21 C.F.R. § 210.3 ............................................................................................13, 14

MPEP § 2751 ...........................................................................................................9

MPEP § 2755 ...........................................................................................................9

Defendants, Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), Actavis Pharma, Inc., Actavis, Inc., Amerigen Pharmaceuticals, Inc. and Amerigen Pharmaceuticals, Ltd. (collectively, "Defendants") respectfully submit this brief in reply to the Responsive Claim Construction Brief filed by Plaintiffs Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd. (collectively, "Forest") as follows:

## **<u>INTRODUCTION</u>**

The prosecution history is so damaging to Forest's positions that Forest made sure its claim construction expert never saw a single page of it. But as a matter of settled law, claim construction must take into account all the intrinsic evidence, including the prosecution history. And all of it must be viewed from the perspective of a person of ordinary skill in the art. Forest failed to abide by these basic principles of claim construction and instead has proposed constructions contrary to the intrinsic record.

"<u>Consisting of</u>": Forest offers <u>no</u> evidence regarding how a person of ordinary skill in the art would construe this claim term in view of the prosecution history. Instead, Forest offers a series of flawed and formalistic attorney arguments aimed at rewriting the prosecution history. In the end, however, none of Forest's arguments escape this central fact: To avoid the prior art and obtain the '040 patent, the applicants amended their claims specifically to exclude unrecited stereoisomers of nebivolol from the scope of the claims. Forest cannot recapture that now by rebranding the unrecited stereoisomers as "impurities."

"<u>Potentiating</u>": For this claim term, Forest ignores most of the prosecution history, and mischaracterizes the rest. Forest also mischaracterizes Defendants' arguments, relies on inapposite case law, and relies on a conclusory and unsupported two-paragraph "expert opinion."

This is the same expert who never read the prosecution history. The Court should reject Forest's flawed arguments.

"Active ingredients": Forest has now changed its position on this claim term in response to Defendants' opening brief. Its new proposal, however, still originates not from the '040 patent or the prosecution history, but instead from an FDA regulation that is wholly extrinsic to the '040 patent. Moreover, Forest's new proposal inexplicably abandons over 75% of that regulation. In the end, Forest's new proposal is just as vague and problematic as the old one.

## ARGUMENT

### I. "Consisting of" excludes unrecited stereoisomers of nebivolol

Despite Forest's attempt to sanitize and deconstruct the prosecution history, the central fact remains: To avoid the prior art, the applicants amended their claims for the unmistakable purpose of excluding unrecited stereoisomers of nebivolol from the claimed compositions. As a result, the claims cannot cover compositions containing any unrecited stereoisomers of nebivolol, irrespective of whether those unrecited stereoisomers may be considered "impurities."

### a. Forest offers no evidence of how one of skill in the art would interpret the phrase "consisting of" *in light of the prosecution history*

The crux of this dispute, both legally and factually, is how one of ordinary skill in the art would interpret "consisting of" in view of the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) (noting that the person of ordinary skill in the art interpreting claim language would review the patent specification and the prosecution history).

On this point, Forest has offered <u>no evidence</u>. Indeed, Forest's own expert, Dr. Roush, failed to provide <u>any</u> opinion regarding how one of ordinary skill in the art would interpret the claim language in view of the prosecution history. *See Uship Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1313 (Fed. Cir. 2013) ("[W]e <u>must</u> look at the term's ordinary meaning in

the context of the written description <u>and the prosecution history</u>.") (emphases added and citation omitted); *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Arguments and amendments made during prosecution of a patent application <u>must</u> be examined to determine the meaning of terms in the claims.") (emphasis added and citation omitted).

Notably, Dr. Roush did not even review the prosecution history. (Roush Decl. at ¶23; Ex. A (attached hereto), Roush Dep. at 23:14-23, 38:7-9, 40:2-41:5.) Instead, he merely reviewed the '040 patent and the '362 patent, and provided his opinion of what a person of ordinary skill in the art would think was the "ordinary meaning of experimentally derived isomers. . . ." (Roush Decl. at ¶¶107-109.) This is <u>not</u> an opinion on the ordinary meaning of "consisting of," let alone the special meaning employed by the applicants.[1] In any event, Dr. Roush's opinion is still flawed because it is not informed by the prosecution history.

As a result, the only evidence before this Court addressing how one of skill in the art would interpret the term "consisting of" in view of the prosecution history is the unrefuted declaration of Defendants' expert, Dr. Piwinski. In that declaration, Dr. Piwinski explained why one of skill in the art would have concluded from the intrinsic evidence "that the applicants sought to exclude from coverage any compositions containing stereoisomers of nebivolol in addition to the listed SRRR and RSSS stereoisomers. . . ." (Piwinski Decl. at ¶62.) Accordingly, the Court should adopt Defendants' proposed construction, which is entirely consistent with the intrinsic evidence.

---

[1] (Roush Dep. at 25:7-16, 41:10-42:9.) Forest's attorneys provided Dr. Roush with their proposed definition and told him that it was the "well-established" meaning of that term in patent law (Roush Decl. at ¶108), but he did not evaluate it or subject it to any scrutiny, and it did not factor in to his opinion. (Roush Dep. at 26:11-15, 27:4-14.)

### b.      The Court should consider Dr. Piwinski's opinion

Dr. Piwinski has opined that "consisting of" excludes unrecited stereoisomers of nebivolol. Forest asserts that the Court should disregard Dr. Piwinski's opinion, which Forest contends is directed to the "legal effect" of the amendment of claims from "consisting essentially of" to "consisting of." (Opp. at 14-16.) This assertion is spurious. As an initial matter, Dr. Piwinski did not offer an opinion regarding the "legal effect" of the amendment. Rather, he offered his opinion on how a person of ordinary skill in the art would understand the claims in view of the prosecution history.[2]

In any event, the Federal Circuit has authorized district courts to rely on expert testimony in interpreting the intrinsic evidence, such as the file history, and instructed courts to "attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Phillips*, 415 F.3d at 1324. Dr. Piwinski is an expert in medicinal chemistry and drug discovery. He is the named inventor on over 50 patents, and was a person of ordinary skill in the art in the relevant time frame. (Piwinski Decl. at ¶7; Piwinski Reply Decl. at ¶3.) He is precisely the kind of expert this Court should look to when determining how one of skill in the art would have understood the claims in view of the prosecution history. *See SanDisk Corp. v. Kingston Tech. Co., Inc.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1312-14) ("Claim terms generally are construed in accordance with the ordinary and customary meaning they would have to one of ordinary skill in the art in light of the specification and the

---

[2] (Piwinski Decl. at ¶¶57, 62.) Forest attempts to disparage Dr. Piwinski's opinions by citing testimony allegedly indicating that he did not know the ordinary meaning of "consisting of" or "consisting essentially of." (Opp. at 15.) Such testimony is of no moment. The issue at hand is the meaning of the claim terms in the context of the intrinsic evidence, <u>not</u> the meaning of these terms in a vacuum. Indeed, Dr. Piwinski rightly noted that the questioning was "very vague" and that one would determine the meaning of "consisting of" on a case-by-case, patent-by-patent basis, in light of the intrinsic evidence. (*See, e.g.*, Ex. B (attached hereto), Piwinski Dep. at 6:11-7:7.)

prosecution history."). Forest cites no statute or policy that would be served by disregarding Dr. Piwinski's opinion.

Forest cites two cases (*Dow* and *White Water*) in support of its argument that Dr. Piwinski is "not qualified" to interpret "consisting of" in light of the prosecution history. (Opp. at 15.) Both are inapplicable. Neither excluded expert opinions in the context of claim construction. The *Dow* court merely excluded testimony on patent office procedure. *Dow Chemical Canada, Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 435 (D. Del. 2009). Dr. Piwinski is not offering such testimony. The *White Water* court excluded testimony because the expert lacked the appropriate technical background and failed to provide any support for his conclusions. *White Water Invs., Inc. v. Ethicon Endo-Surgery, Inc.*, No. 04-81178, 2005 WL 5955023, at *1 (S.D. Fla. Sept. 15, 2005). Forest does not (and cannot) contend that such deficiencies apply to Dr. Piwinski or his testimony.

### c. Forest mischaracterizes the prosecution history

The applicants' disavowal of a broader meaning of "consisting of" is clear from their claim amendments and supporting reasoning made to obviate prior art rejections, as detailed in Defendants' Opening Brief. Nevertheless, Forest asserts, without authority, that the applicants did not "disavow ordinary impurities," because "[t]he applicants did not explain why" they amended the claims. (Opp. at 14.) There is no requirement, however, that applicants explain an amendment in order for it to serve as a narrowing disclaimer. *Cf. Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008) (distinguishing argument-based estoppel, which is based on the applicants' arguments, with amendment-based estoppel). Rather, the presence or absence of a disclaimer is evaluated by looking to the entire prosecution history, not just arguments or

amendments. *Rheox*, 276 F.3d at 1326. In any event, the purpose of the amendment from "consisting essentially of" to "consisting of" was clear and unmistakable without explanation.

Forest also argues that there is no "clear indication that the amendment was directed to unrecited components." (Opp. at 14.) This argument improperly ignores the context in which the amendments were made. The Board warned that the claims may be invalid if they included stereoisomers of nebivolol that did not materially affect the blood pressure reducing or antihypertensive activity of the claimed composition. (JA280-81.) The applicants responded by preemptively amending their claims from "consisting essentially of" to "consisting of." (JA287-89, 293.) They pointed specifically to the new "consisting of" language and argued "that the claims, as amended, are patentable over Van Lommen." (JA293.) The applicants then concluded that Van Lommen did not disclose a composition "consisting of" the two recited isomers. (JA294 (emphasis added).) The only possible interpretation of this exchange is that the applicants amended the claims to exclude unrecited stereoisomers of nebivolol. (Piwinski Decl. at ¶¶57-64.)

Forest further argues that the amendment simply moved the claims "from the conventional meaning of 'consisting essentially of' to the conventional meaning of 'consisting of.'" (Opp. at 13-14 (citing *Raytheon Co. v. Indigo Sys. Corp.*, 682 F. Supp. 2d 717, 731 (E.D. Tex. 2010) and *Kim v. Earthgrains Co.*, No. 01 C 3895, 2010 WL 625220, at *4 (N.D. Ill. Feb. 18, 2010).) This argument again ignores the clear purpose of the amendment, and the non-binding cases cited by Forest are inapposite. *Raytheon* did not address the meaning of "consisting of," because the claims recited "consisting essentially of." *Raytheon*, 682 F. Supp. 2d at 730-31. *Kim*, which was not a claim construction decision, merely relates the "commonly used" meanings of "consisting essentially of" and "consisting of." *Kim*, 2010 WL 625220, at *3. Thus, neither *Raytheon* nor *Kim* address the scenario presented in this case, where the applicants

amended the claims to exclude certain substances by using the transitional phrase "consisting of," and the patent holder later asserted that those very substances could fall within the scope of the claim because they were merely "impurities."[3]

Forest cites *01 Communique Laboratory, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) for the general proposition that an argument during prosecution does not create a disclaimer if the argument is subject to more than one reasonable interpretation. (Opp. at 14.) *01 Communique* is inapposite. In *01 Communique* the arguments and amendments cited in support of the disclaimer did not address the subject matter of the putative disclaimer. *01 Communique*, 687 F.3d at 1297. Here, by contrast, the applicants clearly amended the claims from "consisting essentially of" to "consisting of" to exclude unrecited stereoisomers from the scope of the claim, and did so in response to the Board's suggestion that otherwise, the claims may be unpatentable.

Forest also cites *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) for the general proposition that silence in response to examiner statements does not lead to disclaimer. (Opp. at 14.) In *Salazar*, the applicants did not respond to statements in the Examiner's stated reasons for allowance, and that silence was not enough for a disclaimer. *Salazar*, 414 F.3d at 1344-45. Here, by contrast, the applicants were not silent in response to the Board; they unmistakably amended the claims to avoid the prior art.

---

[3] Forest also cites *Shire Dev. LLC v. Watson Pharms., Inc.*, No. 12-60862-CIV, 2013 WL 174843, at *7-8 (S.D. Fla. Jan. 17, 2013) in support of its expansive interpretation of "consisting of." (Opp. at 9.) It is not clear why. In *Shire*, the court declined to conclude that the meaning of "consisting of" was modified during prosecution. The decision, however, does not analyze any facts; it just states that the court reviewed the arguments and prosecution history but could not say that there was a disavowal. *Shire*, 2013 WL 174843, at *7. Accordingly, *Shire* is not instructive.

Forest also argues that Defendants' proposed construction would exclude a preferred embodiment. (Opp. at 18-19.) But such a construction is warranted if, as here, it is the result of prosecution disclaimer. *See North American Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005) ("limitations may be construed to exclude a preferred embodiment if the prosecution history compels such a result") (citing *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1308 (Fed. Cir. 2000)).

### d. The Xhonneux article and declaration have no bearing on the meaning of "consisting of"

Forest argues that the Xhonneux article and declaration demonstrate that the applicants intended to claim compositions with ordinary impurities. (Opp. at 16.) This argument is spurious for several reasons. First, the Xhonneux declaration was submitted in January 1992 at a time when the pending claims contained the open-ended transitional phrase, "comprising." (JA62-66.) Second, although the Xhonneux article, referring to a racemic mixture of RSSS- and SRRR-nebivolol, states that "the purity of the enantiomers is more than 98%" (JA423), it does not say whether it is referring to overall purity (*i.e.*, exclusion of all other substances) or stereoisomeric purity (*i.e.*, exclusion of all other stereoisomers of nebivolol). Forest's expert could not figure it out (Roush Dep. at 141:6-144:9), nor could one of ordinary skill in the art. (Piwinski Reply Decl. at ¶4.) Finally, even assuming that the compositions tested by Xhonneux at the time contained some stereoisomer(s) of nebivolol other than RSSS- and SRRR-, the applicants later amended the claims to exclude unrecited stereoisomers.

### e. Patent term extension is irrelevant to the meaning of "consisting of"

Forest asserts that in 2008—several years after the '040 patent issued—the applicants "confirmed that they envisioned" a broader meaning of "consisting of" when seeking patent term extension (PTE) pursuant to 35 U.S.C. § 156. (Opp. at 16-17.) This argument is absurd. Alleged

evidence that a patentee, years after the patent issued, subjectively "envisioned" the issued claims to have a certain scope has no bearing on claim construction. And, of course, a patentee cannot change the scope of issued claims simply by sending a letter to the PTO after the patent issues.

If Forest is implying that the PTO construed the claims of the '040 patent in granting the PTE request, Forest is incorrect. A determination that a patent is eligible for PTE is <u>not</u> a determination that the associated commercial product meets the limitations of the patent claims. *See* MPEP § 2751; *see also Hoechst-Roussel Pharms., Inc. v. Lehman*, 109 F.3d 756, 760-61 (Fed. Cir. 1997) (finding that Congress could have, but did not, draft section 156 to require that a claim be infringed by an FDA approved product before PTE could be granted). Rather, when evaluating PTE requests, the PTO simply accepts representations made by the patentee. *See* MPEP § 2755 ("The determination as to whether a patent is eligible for an extension will normally be made solely from the representations contained in the application for patent term extension.").

### f. Applicants disclaimed all unrecited stereoisomers, not just RSRR and SRSS

On remand from the Board, applicants were confronted with a possible anticipation rejection in view of Van Lommen and, in particular, Compound 84. (JA281.) Forest argues that if applicants disclaimed any unrecited stereoisomers on remand, it was only the other two from Compound 84. (Opp. at 18.) But Forest's argument ignores the undisputed fact that Compound 84 would have contained some amount of the other stereoisomer(s) of nebivolol. (Roush Dep. at 52:13-15, 82:3-84:8; Piwinski Reply Decl. at ¶5.) Further, in an earlier amendment, the applicants had acknowledged the eight unrecited stereoisomers of nebivolol in distinguishing the claimed RSSS- and SRRR- stereoisomers from the base compound of nebivolol. (JA86-87.)

Accordingly, on remand, the applicants confronted a prior art composition containing not only RSSS, SRRR, RSRR, and SRSS nebivolol, but also other nebivolol stereoisomers. That prior art (Van Lommen) disclosed all ten stereoisomers of nebivolol. In response, the applicants amended from "consisting essentially of" to "consisting of." Thus, the applicants unmistakably intended to exclude <u>all</u> unrecited stereoisomer(s) of nebivolol from the scope of the claim regardless of whether such other stereoisomers could be regarded as "impurities."

Forest may argue that neither the Examiner nor the Board addressed the possibility that Compound 84 might contain other stereoisomers of nebivolol as impurities, and thus a person of ordinary skill in the art would not think that the applicants disavowed stereoisomeric impurities. But the only evidence on this point (Dr. Piwinski's declaration) is to the contrary. (*See* Section I.a, *supra*.) In any event, a disclaimer is not ambiguous just because the applicants surrendered more than was necessary to overcome the possible rejection. *Uship*, 714 F.3d at 1315 ("The fact that an applicant may have given up more than was necessary does not render the disclaimer ambiguous."); *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) ("we [hold] patentees to the scope of what they ultimately claim, and we have not . . . interpreted [claims] as if they had surrendered only what they had to.").

**g.    Defendants' non-infringement positions are irrelevant to claim construction**

Forest invites this Court to err by construing "consisting of" in view of Defendants' non-infringement positions. (Opp. at 19-21.) Claims must be construed without regard to the accused product. *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) (vacating claim construction and remanding for further evidentiary hearing, noting that "whether the accused device" has a certain feature "is irrelevant to the proper interpretation of the claim term"). Paying lip service to this principle, Forest nevertheless urges this Court to reject

-10-

Defendants' proposed construction <u>precisely because</u> the Defendants' accused products allegedly have certain features. (Opp. at 19-21.) That is not an appropriate basis for claim construction, and the Court should ignore it.

## II.    "Potentiating" requires synergy

"The present invention is an instance of synergism." This is not just an argument; it is a <u>direct quote</u> of what the applicants repeatedly told the PTO during prosecution. (*See, e.g.*, JA1598-99, 1614.) The applicants should be held to their word.

Forest argues that none of applicants' numerous statements during prosecution regarding synergy were "made in the context of defining or even explaining the meaning or significance of a claim term" and that the applicants "were simply highlighting some of the unexpected properties. . . ." (Opp. at 23.) Forest does not cite any authority for their implicit proposition that only statements made in the context of defining or explaining the meaning of claim terms can evidence the meaning of the terms. Defendants are aware of no such principle of claim construction.

Further, the applicants not only characterized their "invention" as "an instance of synergy" (see above), they also <u>equated</u> potentiation and synergy. For example, in their reply brief to the Board, the applicants explained that the unexpected <u>synergistic</u> results they were touting <u>were, in fact, potentiation</u>. (JA249.) Specifically, the applicants stated, "the ability . . . to potentiate other anti-hypertensive agents [] comprises the unexpected benefits. . . ." (*Id.*)

In any event, Forest's arguments do not support its proposed construction. First, Forest observes that the extrinsic evidence leaves open the possibility that outside the context of the '040 patent, "potentiating" could either require synergy or simply mean "enhancing or increasing." (Opp. at 21-23.) Forest also observes that its proposed construction is "consistent

with the '040 specification." (Opp. at 22-23.) These observations settle nothing, however, because they ignore the prosecution history.

Second, Forest argues that Defendants' proposed construction is inconsistent with the wording and structure of claim 3, because synergy would "necessarily require" the potentiating compound to "have its own hypertension-reducing activity. . . ." (Opp. at 22.) But Defendants' proposed construction includes no such requirement. All that is required is that the activity of the two combined be more than the sum of the activities of the two separately. (Piwinski Dep. at 248:19-250:3; Piwinski Reply Decl. at ¶6.)

Third, citing *Chimie v. PPG Industries, Inc.*, 402 F.3d 1371, 1378-80 (Fed. Cir. 2005), Forest argues that Defendants' proposed construction "read[s] additional limitations into the claims." (Opp. at 23.) But *Chimie* is inapposite. In *Chimie*, the Federal Circuit was construing an ambiguous term, and found that it was defined by the specification. *Chimie*, 402 F.3d at 1378-80. The court refused to allow the prosecution history statements regarding another element to limit the term being construed. Here, by contrast, the applicants themselves equated synergy and potentiation. Their definition is precisely on point for the very element being construed.

Finally, the Court should disregard Dr. Roush's assertions regarding the meaning of "potentiating." Below is Dr. Roush's entire discussion of the meaning of potentiating:

> 110.    I have been told that Forest and Defendants have a dispute over the meaning of the term "potentiating." This term appears in claim 3 of the '040 patent, which states:
>
> > 3. A composition according to claim 2 wherein compound (b) is present in an amount capable of potentiating the activity of the blood pressure reducing compound (a).
>
> 111.    A person of ordinary skill in the art would understand that "potentiating" has a broad meaning, which includes enhancing or increasing. A person of ordinary skill would also understand that "potentiating" could refer to a synergistic effect, but does not have to.

(Roush Decl. at ¶110-11.) Dr. Roush admitted he had no other basis for his two-paragraph opinion. (Roush Dep. at 111:3-112:6.)

Dr. Roush's assertions are conclusory and unsupported. Accordingly, they are not useful to a court, and should be disregarded. *Phillips*, 415 F.3d at 1318 ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."); *Winvic Sales, Inc. v. ValueVision Media, Inc.*, No. 09 C 7807, 2011 WL 4901315, at *5 (N.D. Ill. Oct. 14, 2011) (citing *Phillips*, 415 F.3d at 1318-19) ("The Court should reject conclusory, unsupported assertions by experts as to the definition of a claim term. . . .").

## III. "Active ingredients" means ingredients having pharmacological activity

Forest has abandoned its original proposed construction for "active ingredients." Instead, Forest now proposes a new construction that drops the "intent" requirement. The malleability of Forest's proposed construction demonstrates its weakness. In any event, Forest's new proposal is still flawed and unworkable, and the Court should reject it.

First, Forest's new definition is not based on <u>any</u> intrinsic evidence. Indeed, Forest does not cite any intrinsic evidence in the section of its opposition brief devoted to "active ingredients." (*See* Opp. at 24-25.) Instead, as Forest admits, its proposed definition "derives from" and is "relying on" a source that is wholly extrinsic to the '040 patent—namely an FDA regulation pertaining to "Good Manufacturing Practices." (Opp. at 3, 24-25 (citing 21 C.F.R. § 210.3(b)(7).) This regulation appears <u>nowhere</u> in the '040 patent. Indeed, the '040 patent does not refer to good manufacturing processes, regulatory matters, any regulatory terminology, any labeling issues, the C.F.R., or the FDA. Simply put, there is no connection between the patent and the regulation.

Second, despite arguing that the regulation "codified" the meaning of "active ingredient," Plaintiffs' proposed definition departs dramatically from the text of the regulation. Below is a comparison of the two, with the differences set forth in bold:

| 21 C.F.R. § 210.3(b)(7) | Forest's New Proposed Construction |
|---|---|
| **any component** that **is intended to** furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, **or to affect the structure or any function of the body of man or other animals. The term includes those components that may undergo chemical change in the manufacture of the drug product and be present in the drug product in a modified form intended to furnish the specified activity or effect.** | **Ingredients** that furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease |

Forest's definition abandons over 75% of the language in the regulation.[4] Specifically, it abandons the intent requirement, replaces "component" with "ingredient," and excludes everything after the word "disease." Forest does not explain why it has so dramatically deviated from the supposedly "codified" definition of "active ingredient." Forest's expert did not even consider those differences in reaching his conclusions. (Roush Dep. at 127:22-128:4.)

Finally, Forest's new proposed construction is as unworkable as the old one. For example, it is not at all clear how one skilled in the art would distinguish between an ingredient that furnishes pharmacological activity "in the diagnosis, cure, mitigation, treatment, or prevention of disease" from an ingredient that furnishes pharmacological activity, but does not do so "in the diagnosis, cure, mitigation, treatment, or prevention of disease." Indeed, a person of skill in the art would not consider that a salient or useful distinction when attempting to

---

[4] Notably, "component" and "drug product" are separately defined in the same C.F.R. section. *See* 21 C.F.R. § 210.3(b)(3), (4). Thus, Forest's proposed definition also inexplicably abandons these definitions.

determine whether something is an "active ingredient." (Piwinski Reply Decl. at ¶7.) Thus,

Forest's proposed construction is needlessly complex and raises more questions than it answers.[5]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to adopt Defendants'

constructions of the three disputed claim terms.


Dated:  June 21, 2013                                    Respectfully submitted,

                                                         NIRO, HALLER & NIRO

Of Counsel:

Steven A. Maddox (admitted *pro hac vice*)        By:   _/s/ Frederick C. Laney_____
Jeremy E. Edwards (admitted *pro hac vice*)              Frederick C. Laney
KNOBBE, MARTENS, OLSON & BEAR, LLP                       Ashley E. LaValley
1717 Pennsylvania Avenue, NW, Suite 900                  181 West Madison Street, Suite 4600
Washington, DC  20006                                    Chicago, Illinois 60602-4515
(202) 640-6400 Telephone                                 (312) 236-0733 Telephone
(202) 640-6401 Facsimile                                 (312) 236-3137 Facsimile
steve.maddox@knobbe.com                                  laney@nshn.com
jeremy.edwards@knobbe.com                                alavalley@nshn.com

                                                         *Attorneys for Defendants,*
                                                         *Watson Laboratories, Inc. (NV),*
                                                         *Watson Laboratories, Inc. (DE),*
                                                         *Watson Laboratories, Inc. (NY),*
                                                         *Watson Laboratories, Inc. (CT),*
                                                         *Actavis Pharma, Inc., and*
                                                         *Actavis, Inc.*

---

[5] Forest mischaracterizes Defendants' proposed construction as "ambiguous" by implying that Defendants have asked the Court to determine, *as part of claim construction*, whether a given ingredient is active. (Opp. at 25 (citing Br. at 24).) Defendants have done no such thing. Rather, Defendants merely pointed out that their proposed construction, if adopted, would permit more scientific and objective non-infringement proofs. (Br. at 24.)

Dated:  June 21, 2013

Of Counsel:

William D. Hare (admitted *pro hac vice*)
Steven M. War (admitted *pro hac vice*)
McNEELY HARE & WAR LLP
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC  20016
(202) 274-0214 Telephone
(202) 478-1813 Facsimile
bill@miplaw.com
steve@miplaw.com

Christopher S. Casieri (admitted *pro hac vice*)
McNEELY HARE & WAR LLP
12 Roszel Road, Suite C104
Princeton, New Jersey 08540
(609) 731-3668 Telephone
(202) 478-1813 Facsimile
chris@miplaw.com

Respectfully submitted,

SCHARF BANKS MARMOR LLC

By:   */s/ Deirdre A. Fox*
    Deirdre A. Fox
    333 West Wacker Drive, Suite 450
    Chicago, Illinois 60606
    (312) 726-6000 Telephone
    (312) 726-6045 Facsimile
    dfox@scharfbanks.com

*Attorneys for Defendants,*
*Amerigen Pharmaceuticals, Inc. and*
*Amerigen Pharmaceutical Ltd.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| In Re: Nebivolol ('040) Patent Litigation | ) Civil Action No. 12-cv-5026 (EEB) (JC) <br> ) <br> ) Judge Elaine E. Bucklo <br> ) Magistrate Judge Jeffrey Cole <br> ) <br> ) Member Cases: <br> ) Civil Action No. 12-cv-1855 <br> ) Civil Action No. 12-cv-5030 <br> ) |

## CERTIFICATE OF SERVICE

I, Frederick C. Laney, hereby certify that on June 21, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on June 21, 2013, the attached document was Electronically Mailed to the following person(s):

David T. Pritikin
Russell E. Cass
Steven J. Horowitz
Linda R. Friedlieb
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
dpritikin@sidley.com
rcass@sidley.com
shorowit@sidley.com
lfriedlieb@sidley.com
*Attorneys for Plaintiffs,*
*Forest Laboratories, Inc. and*
*Forest Laboratories Holdings, Ltd.*

Bindu Donovan
Todd L. Krause
S. Isaac Olson
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
bdonovan@sidley.com
tkrause@sidley.com
iolson@sidley.com
*Attorneys for Plaintiffs,*
*Forest Laboratories, Inc. and*
*Forest Laboratories Holdings, Ltd.*

Peter S. Choi
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
peter.choi@sidley.com
*Attorneys for Plaintiffs,*
*Forest Laboratories, Inc. and*
*Forest Laboratories Holdings, Ltd.*

By:   */s/ Frederick C. Laney*
      Frederick C. Laney
      Ashley E. LaValley
      181 West Madison Street, Suite 4600
      Chicago, Illinois 60602-4515
      (312) 236-0733 Telephone
      (312) 236-3137 Facsimile
      laney@nshn.com
      alavalley@nshn.com

15418458